# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| CRAIG and KELLY TURNER, | No. 52470-8-II |
| Appellants, | |
| v. | |
| GORDON BALDWIN, NORMAN SIMON, BARBARA SIMON, MARK TAYLOR, SARAH TAYLOR, PIERCE COUNTY, and STATE OF WASHINGTON SHORELINES HEARINGS BOARD, | UNPUBLISHED OPINION |
| Respondents, | |
| And | |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, | |
| Respondents Below. | |

SUTTON, A.C.J. — Craig and Kelly Turner appeal a superior court order affirming a Shoreline Hearings Board decision denying their application for permits under the Shoreline Management Act of 1971 (SMA) to construct a single-use pier/dock, boathouse, and boatlift on the northeast shoreline of Hale Passage at Point Fosdick in Pierce County. The Turners argue that the Board's findings are not supported by substantial evidence, the findings do not support the Board's conclusions of law, and the decision is clearly erroneous, arbitrary, and capricious. They also argue that Pierce County's Shoreline Master Program (PCC SMP) and regulations as applied violate their fundamental constitutionally protected rights to build a pier/dock at this location. We

hold that the superior court and the Board did not err as the findings are supported by substantial evidence, they support the Board's conclusions of law to deny the permits, and are not clearly erroneous, arbitrary, or capricious.[1] We also hold that the Turners do not have a fundamental right to build the proposed pier/dock at this location. Both the Turners and some of the respondents request appellate attorney fees and costs. We agree with the respondents, and award Gordon Baldwin, Norman and Barbara Simon, and Mark and Sarah Taylor reasonable appellate attorney fees and costs, and we deny the Turners' request.

FACTS

I. SHORELINE DEVELOPMENT

The Turners own a single-family residence on Hale Passage at Point Fosdick in Gig Harbor. The property has 100 feet of shoreline frontage and a bulkhead approximately four feet high. The Turners applied for a substantial development permit and a conditional use permit to: (1) construct a 150-foot long by 8-foot wide single-use pier/dock; (2) place a 20-foot long by 10-foot wide boatlift at the south end of the proposed pier/dock; and (3) construct a 192-square-foot boathouse landward of the existing bulkhead.[2] The proposed pier/dock would be located at the northeast shore of Hale Passage at Point Fosdick, across from Fox Island.

Under the PCC SMP, the Turners needed to obtain a shoreline development permit for the proposed pier/dock and a conditional use permit for the boatlift and boathouse. PCC 20.56.030,

---

[1] Based on our holding, we decline to consider the Turners' challenges to findings of fact 3, 7, 15, 22, 23, 25, and 27.

[2] They also wanted to remove an existing hot tub and construct an integrated swimming pool and hot tub, but these items are not issues on appeal.

20.72.030-.040. Shoreline development permit applications are subject to Washington State's SMA, chapter 90.58 RCW, its policies, and regulations.

After reviewing the Turners' permit application, a Pierce County Hearings Examiner approved a shoreline development permit for the proposed pier/dock, pool, and hot tub; approved a conditional use permit for the boatlift at the end of the pier/dock; but denied a permit for the boathouse. As required, the Washington State Department of Ecology reviewed and approved the conditional use permit for the boatlift, but because the County denied a conditional use permit for the boathouse, the Department of Ecology rendered no decision on this aspect of the proposal. The Taylors, who own adjoining shoreline property immediately to the east, and Baldwin and the Simons, who own the two shoreline properties immediately to the west, appealed the County's decision approving the pier/dock and the boatlift. The Turners cross-appealed the County's denial of a conditional use permit for the boathouse, and the Taylors intervened to oppose the boathouse appeal. The three shoreline appeals were consolidated.[3]

## II. PROCEDURE

### A. THE BOARD'S FINDINGS, CONCLUSIONS, AND DECISION

On appeal, the Board reversed the County's approval of the proposed pier/dock, and found that it was not a preferred use under the PCC SMP, the regulations, or SMA policies. The Board further found that the proposed pier/dock and boathouse did not satisfy the criteria for a shoreline development permit under the PCC SMP, the regulations, or the SMA policies. The Board ruled

---

[3] Respondent Department of Ecology filed a brief only related to whether the Turners' proposed boathouse is a water dependent use or an accessory use under the PCC SMP and the SMA.

that the proposed pier/dock failed to satisfy three separate and independent criteria under PCC 20.56.040(A). In sum, the Board found that (1) the proposed pier/dock would obstruct and impair marine oriented recreation areas and thus, the second part of the first criteria under PCC 20.56.040(A)(1) was not satisfied; (2) reasonable moorage alternatives to the proposed pier/dock exist for the Turners, and thus, PCC 20.56.040(A)(5) criteria was not satisfied; (3) the intensity of the Turners' intended use of the proposed pier/dock was not compatible with the surrounding environment and land and water uses, and thus, PCC 20.56.040(A)(7) criteria was not satisfied; and (4) the Turners' proposed boathouse was not a water dependent accessory use, and thus, it did not qualify for a conditional shoreline permit under PCC 20.62.050(D)(2).

1. *The Proposed Pier/Dock and Boatlift*[4]

The Board concluded that the proposed pier/dock "will obstruct or impair marine oriented recreation" and found that this shoreline is regularly used by boaters, rowers, kayakers and swimmers to navigate around the extreme waterward end of the proposed project. Clerk's Papers (CP) at 589 (conclusion of law (CL) 17).

The Turners own their private tidelands. The beach in this area consists of sand and pea gravel and is regularly used by many beach walkers who visit or live along or near this shoreline. The Turners have allowed beach walkers to cross regularly onto their shoreline and they testified that they would continue to do so.

---

[4] Although the proposed boatlift requires a separate permit and is therefore a separate issue, we discuss the boatlift and the proposed pier/dock together because the boatlift can only exist if the pier/dock exists.

Pierce County Planning and Land Services staff evaluated the impacts to marine oriented recreation from the proposed pier/dock and concluded that:

> [M]arine oriented recreation will incur an impact as the approval of the [pier/]dock could result in rowers/kayakers and swimmers traveling further into deeper[,] open waters of Hale Passage to navigate around the extreme waterward end of the [pier/dock]. In addition, if approved, it will create a perception to a beach walker that beach access is limited in this area.

CP at 579 (findings of fact (FF) 35) (internal quotation marks omitted).

There are no docks for over six miles to the east and one mile to the west of the Turners' proposed pier/dock; it would be the first of its type along this stretch of shoreline. Pierce County Planning and Land Services staff acknowledge that the proposed pier/dock is out of character for the area.

The Turners' proposed pier/dock would be situated at the southern tip of Point Fosdick which is exposed to weather events and subject to strong southerly tidal currents and waves, particularly during winter storms. It is also within a heavily trafficked waterway used by recreational boaters, paddleboarders, rowers, and kayakers. As a matter of safety, paddleboarders, rowers, and kayakers hug the shoreline around the point to avoid the strong tidal currents and waves as there are no shoals or reefs there. A pier/dock protruding 150 feet from the shoreline at this location would force paddleboarders, rowers, and kayakers to paddle further out into the deeper waters to navigate around the pier/dock, exposing them to the dangers presented by the strong tidal currents and waves they are currently able to avoid.

Pierce County Planning and Land Services staff concluded that although the project complies with the PCC SMP and regulations, they had reservations about the proposed pier/dock

5

at this shoreline location because it is an uninterrupted seven-mile stretch of shoreline. Pierce County Planner Mojgan Carlson commented:

> [T]his shoreline area is free from docks. A dock structure with a boatlift could result in a permanent view obstruction to all neighboring properties. In addition, during the majority of daily low tides, moorage of a boat will not be feasible because it will ground out. With the aid of the proposed boatlift, vessels will remain in the tidelands and will create a view impact more consistent with storage than moorage. The intent of the code is to protect view aesthetics: therefore staff believes that construction of a permanent dock will change the nature of the shoreline character in this area and would damage the natural landscape of the shoreline.
>
> [T]he proposed dock, if approved, will change the structure free character of the shoreline in this area.
>
> [T]he immediate surrounding properties are not considered high bank waterfront sites and as such if the dock is approved, it will be the only dock in the immediate vicinity of the site that will be highly visible to the neighboring properties. Therefore, [Pierce County Planning and Land Services staff] believes that construction of a permanent dock will permanently create a view obstruction to adjacent residences as well as public view and enjoyment of a natural shoreline area.

CP at 578 (FF 33) (internal quotation marks omitted) (internal citations omitted).

The proposed pier/dock would also impair the views of Mount Rainer and the Olympics for the Taylors.

2. *Reasonable Moorage Alternatives*

The Board next concluded that "a number of reasonable moorage alternatives to a single use [pier/dock] do exist even if the Turners find them less convenient. Therefore, the Turners' proposed single use [pier/dock] is inconsistent with PCC 20.56.040[(A)(5)]." CP at 587 (CL 15). The Turners as sole owners, through Harbor Point Holdings, LLC, acquired shoreline property including a house, a shed, and a pier/dock located on the Gig Harbor waterfront with

6

accompanying Department of Natural Resources aquatic lease rights for the adjacent tidelands. This property is a 15-minute drive from their home, is already improved, and has been used for private recreational boat moorage by lease.

At the time of the hearing before the Pierce County Hearing Examiner, neither the Pierce County Planner nor the Hearings Examiner were aware of the Turners' purchase of the Gig Harbor waterfront property through Harbor Point Holdings, LLC. Carlson testified that had she known, she would not have approved a single-use pier/dock when private moorage was a reasonable alternative.

The Board found that the Turners could also utilize a mooring buoy, in conjunction with a dinghy, to moor and access their boat, just as the previous property owners and their neighbors have successfully done for many years. Finally, the Board found that the Turners could utilize one of the multiple commercial moorage facilities in Gig Harbor or the moorage facility at the nearby Day Island Marina as their neighbors and predecessor owners have done. The Turners testified that they did explore other alternatives, but concluded that the options were at locations that were either too expensive or inconvenient.

3. *Impediment To Public Uses*

The Board concluded that,

[T]his beach is regularly used by the public for walking. There is currently a seven mile stretch of beach that is unimpaired with piers[/docks] and provides the public with an excellent place to enjoy a long walk on the beach with beautiful views of the water, the Olympics, and Mount Rainier. Furthermore, the near shore water in this area is heavily used for [recreational] boating, kayaking, and paddleboarding.

CP at 590 (CL 21). The Board concluded that "The proposed pier[/dock] would present an impediment to all of these public uses." CP at 590 (CL 21).

4. *Cumulative Impacts*

The Board concluded that the proposed pier/dock at this location would likely have cumulative impacts because the proposed use is disfavored under the PCC SMP. It also concluded that the proposed pier/dock at this location would degrade aesthetic uses, set a precedent for future similar large single-use piers/docks here, take away from community uses including beach walkers, kayakers, paddleboarders, and recreational boaters would be lost, and unduly impact the neighbors' water views.

5. *Boathouse and Boatlift*

The Board concluded that the proposed boathouse at this location is not a water dependent accessory use, would impair the Taylors' views, and is not necessary for its intended use of kayak and paddleboard storage. Thus, the Board affirmed the County's denial of the conditional use permit for the boathouse. The Board denied the conditional use permit for the proposed boatlift because the boatlift was only feasible if attached to the proposed pier/dock.

The proposed boathouse would be located 5 feet landward from the Turners' bulkhead, at a height of 18.5 feet. The Turners informed the Hearing Examiner that they would relocate the proposed boathouse further upland to address the Taylors' view concerns. While a precise location was not disclosed at the time, they submitted a revised plan after the hearing. Under the revised plan, the boathouse would be located 22 feet from the bulkhead and the height reduced to 12 feet.

The new location however did not mitigate the proposed boathouse's view impacts to the Taylors. It would still substantially obstruct the Taylors water view and completely obstruct their view of the Olympic Mountains. After visiting the site as part of the Board proceedings, the Pierce County Planner determined that the proposed boathouse would impact the Taylors' view.

8

Although labeled a boathouse, the Turners acknowledged that the boathouse would largely be used as a pool house. The proposed structure was to be situated on the opposite side and upland from the proposed pier/dock, but in very close proximity to a planned swimming pool and outdoor shower. The Turners also intended to use the boathouse as storage for their kayaks, life jackets, fishing equipment, and the like.

B. APPEAL TO SUPERIOR COURT

After the Board's decision, the Turners filed a petition for judicial review under the Administrative Procedures Act (APA)[5] to the Pierce County Superior Court. The superior court affirmed the Board's decision. The Turners appeal the superior court order affirming the Board's decision denying their application for permits under the SMA to construct a single-use pier/dock, boathouse, and boatlift.

ANALYSIS

I. LEGAL PRINCIPLES

The APA governs our review of the Board's decision. RCW 34.05.570(1); RCW 90.58.180(3). "We sit in the same position as the superior court and apply the APA to the administrative record." *Cornelius v. Dep't. of Ecology*, 182 Wn.2d 574, 585, 344 P.3d 199 (2015). We will grant relief from a decision if we determine that it is arbitrary and capricious, clearly erroneous based on the entire record, not supported by substantive evidence, or violates constitutional principles, such as due process. *Superior Refuse Removal, Inc. v. Utilities & Transp. Comm'n*, 81 Wn. App. 43, 48, 913 P.2d 818 (1996). "The burden of demonstrating the invalidity

---

[5] Ch. 34.05 RCW.

9

of agency action is on the party asserting invalidity"—here, the Turners. RCW 34.05.570(1)(a). "We review questions of law and an agency's application of the law to the facts de novo, but we give the agency's interpretation of the law great weight where the statute is within the agency's special expertise. *Cornelius*, 182 Wn.2d at 585.

We will overturn the Board's decision if it is clearly erroneous based on the entire record. *Cornelius,* 182 Wn.2d at 585. We do not reweigh the "credibility of witnesses or substitute our judgment" for the agency's regarding a finding of fact. *Port of Seattle v. Pollution Control Hr'gs Bd.*, 151 Wn.2d 568, 588, 90 P.3d 659 (2004).

We will overturn the Board's decision if it is "arbitrary or capricious." RCW 34.05.570; *Cornelius*, 182 Wn.2d at 615. A decision is arbitrary or capricious if it constitutes willful and unreasoning action in disregard of facts and circumstances. *Port of Seattle*, 151 Wn.2d at 589. Even if a different conclusion may have been reached, a decision will not be considered arbitrary or capricious if there is "room for two opinions" and the action taken is upon honest and due consideration. *Buechel v. Dep't. of Ecology*, 125 Wn.2d 196, 202, 884 P.2d 910 (1994). We also will overturn a Board's decision if it violates due process. *Superior Refuse Removal*, 81 Wn. App. at 48.

## II. SUBSTANTIAL DEVELOPMENT PERMIT CRITERION

The Board, in its discretion, must balance the impacts of the Turners' proposed pier/dock with the rights of the private shoreline property owners, here the neighbors. The Board must then determine if the Turner's proposed pier/dock meets the following relevant substantial development permit criterion applied to a single-use pier/dock, consistent with the PCC SMP policies:

The granting of a Substantial Development Permit is dependent upon the County reviewing authority's determination that the proposed project is consistent with the policies of the Master Program and with the following [substantial development permit] criteria:

1. Important navigational routes or marine oriented recreation areas will not be obstructed or impaired;

2. Views from surrounding properties will not be unduly impaired;

3. Ingress-Egress as well as the use and enjoyment of the water or beach on adjoining property is not unduly restricted or impaired;

4. Public use of the surface waters below ordinary high water shall not be unduly impaired;

5. A reasonable alternative such as joint use, commercial or public moorage facilities does not exist or is not likely to exist in the near future;

6. The use or uses of any proposed dock, pier or float requires, by common and acceptable practice, a Shoreline location in order to function;

7. The intensity of the use or uses of any proposed dock, pier and/or float shall be compatible with the surrounding environment and land and water uses.

PCC 20.56.040(A).

Relevant here, the Board found that the Turners' proposed pier/dock did not meet the permit criteria 1, 5, and 7. These regulatory provisions and WAC 173-27-150(1)(c) expressly condition permit approval upon demonstration by the applicant that their proposal is consistent with the PCC SMP policies and the permit criteria. The Turners have the burden to prove that the Board's findings are not supported by substantial evidence and are, thus, clearly erroneous. *Whatcom County v. Hirst*, 186 Wn.2d 648, 667, 381 P.3d 1 (2016); RCW 34.05.570(1)(a). They fail to meet this burden. We address below the Board's findings and conclusions regarding permit criteria 1, 5, and 7.

III. PROPOSED PIER/DOCK

The Turners argue that the proposed pier/dock is a favored water-dependent joint use pier/dock, and thus, as a preferred use, it is conditionally allowed under the PCC SMP and the SMA, and does not violate the compatibility standard in PCC 20.56.040(A) and PCC 20.56.010(J). They also argue that the Board ignored the SMA policies in RCW 90.58.020 which control the Board's interpretation of the local PCC policies which disfavor single-use piers/docks. We hold that the Board's findings are supported by substantial evidence, are not clearly erroneous based on the record, and they support the Board's conclusions that the proposed pier/dock is for residential single-use which is a disfavored use under the applicable law.

The SMA establishes a comprehensive scheme of shoreline regulation and requires local governments to develop "shoreline master programs" to regulate shoreline development consistent with the goals and polices of the SMA. *Buechel*, 125 Wn.2d at 203. Any shoreline development in Washington must be consistent with the SMA and the relevant local SMP, here Pierce County's. RCW 90.58.140(1).[6]

The Department of Ecology reviews and approves an SMP and determines that it is consistent with the SMA. Ch. 173-26 WAC; *See* RCW 90.58.090. Once approved by the Department of Ecology, the SMPs are the regulations that apply to activities within that shoreline jurisdiction and become part of the State Master Program, which includes all local SMPs. RCW 90.58.030(3)(d); RCW 90.58.100(1). The Department of Ecology also reviews deviations from

---

[6] The legislature amended RCW 90.58.140 in 2019. LAWS OF 2019, ch. 225, § 1. Because these are not relevant here, we cite to the current version of the statute.

an SMP that can only be authorized through variance permits or conditional use permits. RCW 90.58.140(10).

RCW 90.58.020 provides that, in instances where alterations to the natural shoreline are authorized, priority shall be given to

> [S]ingle-family residences and their appurtenant structures, ports, shoreline recreational uses including but not limited to parks, marinas, piers, and other improvements facilitating public access to shorelines of the state, industrial and commercial developments which are particularly dependent on their location on or use of the shorelines of the state and other development that will provide an opportunity for substantial numbers of the people to enjoy the shorelines of the state.

The SMA does not specifically refer to private residential piers/docks as preferred uses.

A. SINGLE-USE PIER/DOCK

The Turners claim their proposal is to construct a joint-use pier/dock. We disagree because as the Board correctly determined the proposed pier/dock is a single-use residential pier/dock.

PCC's SMP regulations define "single use pier or dock" and "joint use pier or dock" under PCC SMP 20.56.010:

> I. **Single Use Pier or Dock.** "Single Use Pier or Dock" shall mean a dock or pier including a gangway and/or float which is intended for the private noncommercial use of one individual or family
>
> J. **Joint Use Pier or Dock.** "Joint Use Pier or Dock" shall mean a pier or dock including a gangway and/or float which is intended for the private, noncommercial use of not more than four waterfront building lot owners, at least one boundary of whose building lots lies within 1,000 feet of the boundary of the lot on which the joint use pier or dock is to be constructed.

(Emphasis in original.)

The Board found that the proposed pier/dock was intended for residential use by one single family—the Turners. The neighbors declined to join the Turners to construct this proposed

pier/dock as a joint use pier/dock. The Board determined that this residential, single-use pier/dock was a "disfavored use" under the PCC SMP. CP at 593 (CL 30). We agree that the Board correctly found that the proposed pier/dock was a single-use pier/dock and that this finding is supported by substantial evidence and thus, it is not clearly erroneous based by the entire record.

B. THE PROPOSED PIER/DOCK WOULD OBSTRUCT OR IMPAIR MARINE ORIENTED RECREATION

1. *Undue Obstruction*

Applying criterion 1, the Board concluded that the single-use 150-foot residential pier/dock proposed on this unencumbered, low bank shoreline would obstruct or impair important marine oriented recreational areas. The Board concluded that:

> Swimmers, paddleboarders, and kayakers will be required to either go around or under the pier[/dock] depending upon the level of the tide. The currents in Hale Passage are stronger further from shore and can be frightening even for experienced kayakers. . . . Fishing and other boats currently come close into the shore as they round the point and they will have to avoid the pier[/dock]. . . . After decades without any piers[/docks] on this shoreline, it would be a safety hazard for boaters who are not expecting to find a pier[/dock] 150 feet out from the shore. The Board notes that this criteria does not require that the impairment be undue; the question is simply whether marine oriented recreation areas will "be obstructed or impaired."

CP at 588-89 (CL 17) (quoting PCC 20.56.040(A)(1)).

The Turners argue that the Board's conclusion is not supported by substantial evidence and thus, it is clearly erroneous based on the entire record. We disagree.

This particular shoreline along Hale Passage, situated at the southern-most point of the Gig Harbor Peninsula, is unique. It is unique not just because of the current absence of impeding structures, but also because it is exposed to the weather, subjected to strong currents and waves, and along a thoroughfare that is heavily trafficked by boaters, kayakers, and paddleboarders. Recreational boaters regularly hug the shoreline, and a pier/dock protruding 150-feet into the water

would pose an unexpected hazard as boaters cut around Point Fosdick. To avoid the 150-foot pier/dock, paddleboarders, kayakers, and rowers also would be forced to paddle further into the open waters and expose themselves to the strong currents and wave action they could otherwise avoid.

While the Turners presented some competing testimony, the Board weighed the totality of the evidence to find that this proposed pier/dock would obstruct or impair marine oriented recreation in light of the characteristics of this particular shoreline, the conditions of the water at this particular shoreline, and the public recreational uses of this particular shoreline.

Unlike other permit criteria, PCC 20.56.040(A)(l) does not require a showing of "undue" impairment. Though the impairment presented in this unique context does readily rise to the level of "undue," the proposed single-use residential pier/dock fails to satisfy criterion (1), which prohibits obstruction or impairment of important marine oriented recreational areas. The Turners argue that the Board should have considered the 5 mile per hour near shore speed limit. Even if considered, the Board's finding is still supported by substantial evidence, that the proposed pier/dock would obstruct or impair important marine oriented recreational areas.

Because the Board's findings are supported by substantial evidence and are not clearly erroneous based on the entire record, they support the Board's conclusion that the proposed pier/dock would obstruct or impair marine oriented recreation.

2. *The Turners Have Reasonable Mooring Alternatives*

PCC 20.56.040(A)(5) provides that a permit may only be approved if "[a] reasonable alternative such as joint use, commercial or public moorage facilities does not exist or is not likely to exist in the near future." Applying criterion 5, the Board determined that the Turners have three

reasonable alternatives to the proposed residential pier/dock: a mooring buoy, a public mooring facility, or the pier/dock owned by their wholly owned LLC.

As to criterion 5, the Board concluded the following:

14.

The Turners currently own property on the Gig Harbor waterfront that includes private moorage. The Turners contend this moorage is not a reasonable alternative because the two berths at their pier[/dock] are currently leased to others and expanding the facility would take time and money. The Board is not persuaded by this argument. *The Turners have not presented any persuasive reason why they could not choose to change their leasing arrangements and moor their own boat at their Gig Harbor waterfront pier[/dock] if they chose to do so.* Mr. Turner testified that the leases could be terminated upon 90 days' notice. When the Turners purchase a boat, if they wish to continue to allow their tenants to use their Gig Harbor moorage, *they can moor their boat at a nearby marina like some of their other neighbors. Alternatively, the Turners could moor their boat at a mooring buoy like Dr. Baerg, the previous owner of the property.* The Board concludes that a mooring buoy is a workable alternative for this shoreline property. The previous owner of the Turner property testified that he was able to use a mooring buoy for his boats in Hale Passage.

15.

Here, the Board concludes that a number of reasonable moorage alternatives to a single use pier[/dock] do exist even if the Turners find them less convenient. Therefore, the Turners' proposed single use pier is inconsistent with PCC [20.56.040(A)(5)].

CP at 587 (emphasis added) (footnote omitted) (internal citations omitted).

a. *A Buoy is a Reasonable Alternative to a Pier/Dock*

The Turners argue that a mooring buoy cannot be a reasonable alternative to a pier/dock because (1) a mooring buoy is not a listed alternative in the PCC SMP; (2) they wish to moor their boat near their home year round; (3) a mooring buoy is inconvenient; and (4) they intend to use the proposed pier/dock for other purposes than just mooring and boating access because they also

16

want to view the shoreline, fish, picnic, and entertain. The Board correctly rejected these arguments.

PCC 20.56.040(A)(5) does not provide an exhaustive list of alternatives. The PCC uses the phrase "such as" as a precursor to the alternatives listed. Moreover, the PCC SMP policies, which must be considered when applying the permit criteria expressly identify buoys as a preferred alternative to a single-use residential pier/dock. PCC SMP pier policy (d) explicitly discourages use of piers/docks associated with single-family residences, while policy (f) encourages the use of mooring buoys as an alternative to piers/docks in front of single-family residences. Any interpretation that PCC 20.56.040(A)(5) does not include a buoy as a potential reasonable mooring alternative to a pier/dock for a single-family would contravene the PCC SMP policies the regulation is supposed to implement.

Here, the Board heard testimony by persons who regularly boat along this shoreline that, due to the strong winds and currents, the boating season generally runs from April to September. Thus, using a pier/dock to moor a boat year round is not practical at this location. A mooring buoy is an available and appropriate alternative during the boating season, and the method was successfully used by the Turners' neighbors and the prior owners of their property.

Further, the Board has held previously that an applicant must demonstrate that a pier/dock is actually needed for moorage, not that it is simply more convenient. *Walker v. San Juan County*, No. 09-012, at 29 (Wash. Shorelines Hr'gs Bd. Aug. 27, 2010). It has also held that the feasibility of available reasonable alternatives should be evaluated without regard to individual age or physical limitations. *Walker*, SHB No. 09-012, at 28.

17

Piers/docks gain their status as appropriate shoreline structures because they can provide access to watercraft. *See* WAC 173-26-201(2)(d) ("the act establishes policy that preference be given to uses that are unique to or dependent upon a shoreline location."); *see also* WAC 173-26-231(3)(b) ("New piers and docks shall be allowed only for water dependent uses or public access. As used here, a [pier/]dock associated with a single-family residence is a water-dependent use provided that it is designed and intended as a facility for access to watercraft and otherwise complies with the provisions of this section."). Here, fishing, picnicking, viewing the shoreline and partying can occur during the year without a pier/dock as the Board correctly concluded.

b. *The Turners' Private Pier/Dock is a Reasonable Alternative To a Single-Use Pier*

The Board concluded in relevant part that "[t]he Turners have not presented any persuasive reason why they could not choose to change their leasing arrangements and moor their own boat at their Gig Harbor waterfront pier[/dock] if they chose to do so," referring to the commercial pier/dock property owned by Harbor Point Holdings, LLC as a reasonable alternative. CP at 587 (CL 14). The Board also concluded that the Turners could "moor their boat at a nearby marina like some of their other neighbors" or "could moor their boat at a mooring buoy like" other property owners. CP at 587 (CL 14). The Turners argue that this conclusion ordered them to disregard Harbor Point Holdings separate legal status and would require them to raid its holdings to satisfy personal interests. We disagree.

The Board did not direct Harbor Point Holdings to take any action. It simply concluded that the Turners, as the sole members of the LLC, could choose to utilize the Harbor Point Holdings pier/dock for mooring their own boat. The Board correctly identified that choice as only one of several reasonable alternatives to the proposed pier/dock which were available to the Turners.

The Board's findings are supported by substantial evidence and they support the Board's conclusion that reasonable alternatives to a single-use residential pier/dock exist.

C.   THE INTENSITY OF THE USE OF THE PROPOSED PIER/DOCK IS NOT COMPATIBLE WITH THE SURROUNDING ENVIRONMENT AND LAND AND WATER USE

The Board found that, under PCC 20.56.040(A)(7), the intensity of the use of the proposed pier/dock was not compatible with the surrounding environment and land and water uses at this location.  The Turners argue that this finding is not supported by substantial evidence, is clearly erroneous, arbitrary and capricious, and does not consider PCC SMP policies.  We disagree.

PCC SMP pier policy (d) discourages use of piers/docks associated with single-family residences.  PCC SMP pier policy (e) provides that "In considering any pier, considerations such as environmental impact, navigational impact, *existing pier density*, parking availability, and impact on adjacent proximate land ownership should be considered," referring to PCC 20.56.040(A)(7).

The Board considered these policies and determined that the existing pier/dock density is zero because there are no existing piers or docks within miles.  Building the proposed pier/dock would be wholly out of character for the area.  It could also pave the way for more single-use piers/docks, taking this shoreline in the opposite direction of all the noted pier policies.  A 150-foot pier/dock extending from a 3.5 foot bulkhead over waters with uniquely strong tidal currents and waves would also interfere with the many other public marine recreational uses of this shoreline.  The Board's findings are supported by substantial evidence and in turn support its conclusion that the intensity of the use of the proposed pier/dock is not compatible with the surrounding environment and land and water uses.

The Turners also argue that the status of first pier/dock of its type along this shoreline is not by itself determinative, citing *Innskeep v. San Juan County*, No. 98-033 (Wash. Shorelines Hr'gs Bd. Apr. 16, 1999), and *May v. Robertson*, 153 Wn. App. 57, 218 P.3d 211 (2010). We agree that first pier/dock status is not determinative, but it is a factor the Board could and did correctly consider. Further, *Innskeep* and *May* are distinguishable because they both addressed joint-use piers/docks. Here, the applicable PCC SMP policies and regulations were applied by the Board with consideration given to all the specific facts related to the proposed pier/dock, including that it would be the first pier/dock of this type on an expansive stretch of shoreline that is regularly used by the public.

In sum, the Board concluded that the proposed pier/dock was inconsistent with the PCC SMP policies on piers and failed to meet three separate permit criteria under PCC 20.56.040(A)(1), (5), and (7). As a result, the Board reversed the County's decision approving the pier/dock shoreline development permit. The Board's findings are supported by substantial evidence and they support the Board's conclusion that the intensity of the use of the proposed pier/dock is not compatible with the surrounding environment and the land and water uses. Thus, we hold that the Board did not err.

IV. THE PROPOSED BOATHOUSE IS NOT A WATER DEPENDENT ACCESSORY USE

The Board also determined that the proposed boathouse was not a water dependent accessory use because it would be used for storage and would impact the Taylors' views of the water and their view of the Olympic Mountains from one window in one direction within their home, but not other views of the Olympics.

The Turners argue that the Board erred in applying the conditional use permit criteria to their proposed boathouse. They argue that the proposed boathouse (1) was a water dependent use and that minimal view impairment is not a sufficient reason to justify denying a permit; (2) should be permitted outright as an accessory use; and (3) is exempt from the conditional use permit regulations as it is an appurtenance to their house.[7] We disagree.

For lot lines abutting the ordinary high-water line such as the Turner's residential property, PCC 20.62.050(C) requires a 50-foot setback from a lawfully established bulkhead in which development may not occur. PCC 20.62.050(D)(2) allows a property owner to construct a "water dependent accessory use" within the setback so long as the property owner obtains a conditional use permit. PCC 20.62.050(D)(2) states in relevant part:

> *Any water dependent accessory use may be allowed within the 50 foot setback upon the issuance of a Conditional Use Permit.* The issuance of a Conditional Use Permit shall be predicated upon a determination that the project will be consistent with the following Conditional Use criteria, and the Conditional Use criteria listed in WAC 173-14-140, and will cause no reasonable adverse effects on the environment and other uses.

> Conditional Use Criteria:

> a. *Views from surrounding properties will not be unduly impaired*.

(Emphasis added.) An applicant seeking such a permit must meet the statewide conditional use permit review criteria, WAC 173-27-160(1), which requires the applicant to demonstrate the following relevant factors:

> (a) That the proposed use is consistent with the policies of RCW 90.58.020 and the master program;

---

[7] The Department of Ecology filed a brief to clarify the law on water dependent accessory use because it had not reviewed the proposed boathouse because the permit was denied. The Taylors adopt and incorporate the Department's arguments.

(b) That the proposed use will not interfere with the normal public use of public shorelines;

(c) That the proposed use of the site and design of the project is compatible with other authorized uses within the area and with uses planned for the area under the comprehensive plan and shoreline master program;

(d) That the proposed use will cause no significant adverse effects to the shoreline environment in which it is to be located; and

(e) That the public interest suffers no substantial detrimental effect.

Thus, to qualify for a conditional use permit for the boathouse, the Turners' proposed boathouse must be a water dependent accessory use and it cannot unduly impair views from surrounding properties. As the Board correctly determined, the Turners fail to meet these conditional shoreline permit criteria.

First, the Board found that the proposed boathouse was not a water dependent use. "Water dependent uses" are "[a]ll uses which cannot exist in any other location and are dependent on the water by reason of the intrinsic nature of the operation." PCC 20.04.670. "Boathouse" is defined at PCC 20.04.030 as "[a] covered or enclosed moorage space." Neither PCC SMP nor the statewide SMP or chapter 173-26 WAC regulations designate single-family residences as water dependent uses.

The Turners admit that "the boathouse will be used for storage," not to moor a boat, and not as "[a] covered or enclosed moorage space." Br. of Appellant at 41; PCC 20.04.030. As the Board properly found "[b]ecause this structure is not planned to be used for boat moorage it does not need to be within the setback from the bulkhead or even in a shoreline location." CP at 596 (CL 35). The Board's finding is supported by substantial evidence and it supports its conclusion

that the Turners have not shown any water dependent need for building their proposed boathouse within the 50-foot shoreline setback.

Second, the Board found that the Turners' proposed boathouse is not permitted outright because it is not an accessory use. The Turners rely on PCC 20.62.040(A)(1)(c)(2) to argue that the boathouse should be considered an accessory to their residence, like a shed or storage facility, and should therefore be permitted outright. But that provision of the PCC SMP provides that any sheds or storage facilities can only be constructed outside any applicable setback. PCC 20.62.040(A)(1)(c)(2). It is undisputed that the Turners propose to locate their boathouse within the 50-foot setback; therefore, it must comply with state and local conditional use permit review criteria and it fails to do so. *See* PCC 20.62.050(D)(2); WAC 173-27-160.

Next, the Turners argue that the proposed boathouse is a normal "appurtenance" to their residence and thus, the boathouse is exempt from the requirements for a shoreline substantial development permit. Br. of Appellant at 41. We disagree.

The PCC SMP explicitly requires a conditional use permit for any construction within the 50-foot setback. PCC 20.62.050(D)(2). The exemptions do not apply to the proposed boathouse. A boathouse is not considered an "appurtenance" that is exempt from a substantial development permit. The statewide shoreline permit guidelines provide in relevant part:

> An "appurtenance" is necessarily connected to the use and enjoyment of a single-family residence and is located landward of the ordinary high water mark and the perimeter of a wetland. On a statewide basis, normal appurtenances include a garage; deck; driveway; utilities; fences; installation of a septic tank and drainfield and grading which does not exceed two hundred fifty cubic yards and which does not involve placement of fill in any wetland or water-ward of the ordinary high water mark. Local circumstances may dictate additional interpretations of normal appurtenances which shall be set forth and regulated within the applicable master program.

WAC 173-27-040(2)(g).  The Turners' proposed boathouse is therefore not an "appurtenance" under the PCC SMP or statewide regulations.

The Board's findings are supported by substantial evidence and they support its conclusion that the boathouse is not a water dependent accessory use or an appurtenance required to be within the 50-foot setback from the bulkhead.  Thus, we hold that the Turners' argument fails.

V.  CONSTITUTIONAL CLAIM

The Turners assert an "as applied" challenge to the Board's decision, claiming that they have a fundamental right to construct a pier/dock at this location, citing *Maytown Sand & Gravel, LLC v. Thurston County.*[8]  Br. of Appellant at 45-46.  The Taylors argue that the Turners failed to satisfy the permit criteria and thus, they do not have a fundamental right to build the pier/dock, and that the Turners do not analyze how the applicable PCC SMP, regulations, and the SMA policies as applied to them are unconstitutionally vague.  We hold that the Turners' constitutional claim fails.

*Maytown* held that under the Fourteenth Amendment, "property" encompasses more than just tangible physical property, and a permit applicant has a cognizable property interest "'when there are articulable standards that constrain the decision-making process.'"  191 Wn.2d at 431 (quoting *Durland v. San Juan County*, 182 Wn.2d 55, 71, 340 P.3d 191 (2014).  In other words, a permit applicant has a constitutionally-protected right to develop the land where the permit applicant has satisfied the necessary preconditions.

---

[8] 191 Wn.2d 392, 423 P.3d 223 (2018), *abrogated on other grounds by Yim v. City of Seattle*, 194 Wn.2d 682, 451 P.3d 694 (2019).

The Turners first claim that they satisfied the permit criteria and thus, they have a fundamental right to build the proposed pier/dock and boathouse at this location. But, as discussed above, the Board correctly concluded that the Turners proposed pier/dock and boathouse are not preferred uses and they failed to satisfy the permit criteria.

The Turners next claim that the Board's decision was arbitrary because it relied on unarticulated criteria, the boating and nearshore recreation, speculative impacts, and added "dock density" to the approval permit criteria. But the Turners fail to sufficiently explain how the permit criteria are arbitrary. The Turners may disagree with the Board's findings, but their disagreement does not establish that the findings are not supported by substantial evidence, or that the Board misapplied the applicable shoreline law to the specific facts here. Moreover, the Board weighed the evidence and the credibility of witnesses, which we do not reweigh on appeal. *Port of Seattle*, 151 Wn.2d at 588. Even if a different conclusion may have been reached, the Board's decision will not be considered arbitrary or capricious if there is "room for two opinions" and the action taken is upon honest and due consideration. *Buechel*, 125 Wn.2d at 202.

The Turners next argue that the Board's decision conflicts with RCW 90.58.020's standard for a water dependent use and allowance for a pier/dock "'designed and conducted in a manner to minimize, insofar as practical, any resultant damage to the ecology and environment of the shoreline area and any interference with the public's use of the water.'" Br. of Appellant at 48 (quoting RCW 90.58.020). They claim that the proposed pier/dock

25

does not have any discernable environmental impacts to the aquatic habitat or species that rely upon it and [thus it] is deemed a water dependent preferred reasonable use. Within that context, governmental authority is limited by RCW 90.58.020 since alterations to the natural condition <u>must be</u> recognized and allowed if impacts are minimized.

Br. of Appellant at 46.

The Board's decision does not conflict with RCW 90.58.020. As discussed above, the Board correctly found that the proposed pier/dock is not a preferred use, nor is the proposed boathouse a water dependent accessory use. The Board correctly noted that the Turners' argument, that a single-use residential pier/dock is a preferred use under RCW 90.58.020, has been previously rejected in *Samson v. City of Bainbridge Island*, 149 Wn. App. 33, 50-51, 202 P.3d 334 (2009).

Because the Turners failed to meet all permit criteria, unlike the permit applicant in *Maytown Sand and Gravel*, 191 Wn.2d at 431, the Turners do not have a fundamental right to build the proposed pier/dock and boathouse at this location. Thus, we hold that their constitutional claim fails.

ATTORNEY FEES AND COSTS

The Turners and Baldwin, the Simons, and the Taylors request appellate attorney fees and costs under RAP 18.1(a) and RCW 4.84.370(1) as the prevailing parties. We award Baldwin, the Simons, and the Taylors, reasonable appellate attorney fees and costs, and we deny the Turners' request.

RAP 18.1(a) allows the award of reasonable attorney fees and costs on appeal if the applicable law grants the party the right to recover them. The applicable law in this case, RCW 4.84.370(1), directs this court to award attorney fees and costs "to the prevailing party or

substantially prevailing party on appeal . . . of a decision by a county, city, or town to . . . deny a . . . shoreline permit."

RCW 4.84.370(1)(a) provides that "The prevailing party on appeal was the prevailing or substantially prevailing party before the county, city, or town, or in a decision involving a substantial development permit under chapter 90.58 RCW, the prevailing party on appeal was the prevailing party or the substantially prevailing party before the shoreline[s] hearings board." RCW 4.84.370(1)(b) provides that "The prevailing party on appeal was the prevailing party or substantially prevailing party in all prior judicial proceedings." Baldwin, the Simons, and the Taylors, meet both definitions of a prevailing party under the applicable law because they prevailed at all earlier stages of this case and prevail on appeal.

Accordingly, we award Baldwin, the Simons, and the Taylors, reasonable appellate attorney fees and costs and deny the Turners' request.

## CONCLUSION

We hold that the Board's findings are supported by substantial evidence and they support the Board's conclusions to deny the Turners a shoreline development permit for the proposed pier/dock and boathouse, and thus the Board did not error and we affirm the superior court's decision affirming the Board. We award Baldwin, the Simons, and the Taylors reasonable appellate attorney fees and costs and deny the Turners' request.

No. 52470-8-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Sutton, A.C.J.

We concur:

_____
Worswick, J.

_____
Melnick, J.